Micha Star Liberty (SBN 215687)
H. Larry Elam III (SBN 178836)
Micah Clatterbaugh (SBN 316808)
**LIBERTY LAW OFFICE, INC.**
1970 Broadway, Suite 700
Oakland, CA 94612
Telephone: (510) 645-1000
Facsimile: (888) 645-2008
E-mail: team@libertylaw.com

Attorneys for Plaintiff K.A., a minor,
by and through her *Guardian ad Litem* MAYRA P.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| K.A., a minor, by and through her *Guardian ad Litem* MAYRA P., | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. NEGLIGENCE (FTCA) |
| CLINICA SIERRA VISTA, a Federally Qualified Health Center; DMITRI DE LA CRUZ, M.D. in his individual capacity; KATHLEEN KALFMAN, in her official capacity; the UNITED STATES OF AMERICA, a governmental entity; and DOES 1 through 10, inclusive, | 2. NEGLIGENCE (CALIFORNIA COMMON LAW) |
| | 3. PREMISES LIABILITY |
| | 4. DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, (CAL. CIV. CODE § 51) |
| Defendants. | 5. SEXUAL HARASSMENT IN VIOLATION OF (CAL. CIV. CODE § 51.9) |
| | 6. GENDER VIOLENCE IN VIOLATION OF (CAL. CIV. CODE § 52.4) |
| | 7. SEXUAL BATTERY IN VIOLATION OF (CAL. CIV. CODE § 1708.5) |
| | 8. BATTERY |
| | 9. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| | **DEMAND FOR JURY TRIAL** |

- 1 -

Plaintiff K.A., a minor, ("Plaintiff") complains against Defendants CLINICA SIERRA VISTA, a Federally Qualified Health Center, DMITRI DE LA CRUZ, M.D., in his individual capacity, KATHLEEN KALFMAN, in her official capacity, and the UNITED STATES OF AMERICA, a governmental entity, by and through her *Guardian ad Litem*, MAYRA P., as follows:

## JURISDICTION AND VENUE

1. Plaintiff's claims arise under the Federal Tort Claims Act (FTCA), California statutory law, and California common law. The United States District Court, in and for the Eastern District of California, has jurisdiction over this matter pursuant to the FTCA (28 USC § 2671, *et seq.*) and 28 USC § 1346(b)(1). The Court has supplemental jurisdiction over Plaintiff's California statutory and common law claims under 28 USC § 1367 because these state law claims arise from the same common nucleus of operative facts as Plaintiff's FTCA claims.

2. The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

3. Venue is proper in the Eastern District of California because a substantial portion of the acts and omissions giving rise to liability occurred in this District pursuant to 28 USC § 1391(b)(2) and 28 USC § 1402(b). Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at CLINICA SIERRA VISTA's Elm Women's & Pediatric Community Health Center located at 2760 South Elm Avenue, Fresno, California.

4. At all times relevant to this Complaint, defendant UNITED STATES OF AMERICA was a sovereign nation and provided federal funds to a health clinic in Fresno County called CLINICA SIERRA VISTA. At all times relevant to this complaint, CLINICA SIERRA VISTA was a Federally Qualified Health Center and was deemed a Federal Public Health Service employee. As such, the UNITED STATES OF AMERICA acts as the primary insurer for the facility for claims brought under the Federal Torts Claims Act and assumes liability for the acts and/or omissions of the federally funded clinic.

**INTRADISTRICT ASSIGNMENT**

5.     This matter arose in Fresno County, California.  Pursuant to Local Rule 120(d) of the Local Rules of the Eastern District of California, this case shall be commenced in the United States District Court sitting in Fresno, California.

**FEDERAL TORT CLAIMS ACT ADMINISTRATION EXHAUSTION**

6.     Pursuant to the provisions of the FTCA and before the commencement of this action, Plaintiff presented an administrative claim for damages to the Department of Health & Human Services ("HHS") in Washington, D.C., related to the events and circumstances complained of here. That claim was timely presented on or about September 10, 2020.

7.     By March 10, 2021, six months after the HHS received Plaintiff's administrative claim, the HHS had neither accepted nor rejected the claims.  Pursuant to 28 USC § 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claims.

**THE PARTIES**

8.     Plaintiff K.A. is an individual minor female child and resident of Fresno County, in the State of California.  Plaintiff was five years old during the relevant period.  Her mother, MAYRA P., took Plaintiff to Elm Women's & Pediatric Community Health Center, located at 2760 S. Elm Avenue, Fresno, California, for a routine physical examination in preparation for kindergarten.  Accordingly, Plaintiff's mother MAYRA P. petitioned the United States District Court for the Eastern District to be appointed as Plaintiff's *Guardian ad Litem* contemporaneously with this lawsuit.  To protect her privacy, Plaintiff is identified herein as "Plaintiff" or "K.A."

9.     At all relevant times, Defendant CLINICA SIERRA VISTA was a Federally Qualified Health Center and was deemed a Federal Public Health Service employee concerning certain health or health-related claims for itself and its covered individuals.  It received funding from the HHS.  CLINICA SIERRA VISTA was specifically mandated at all relevant times under 42 § USC 233(h)(1) to implement and follow safety and security policies and procedures regarding the performance of health-related functions.  CLINICA SIERRA VISTA was specifically mandated at all relevant times under 42 § USC 233(h)(2) to review and verify the credentials, references, claims history, fitness, professional review organization findings, and license status of all its physicians and

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

1  other licensed or certified health care practitioners.  CLINICA SIERRA VISTA owned, operated,

2  secured, maintained, inspected, repaired, managed, serviced, or otherwise controlled the premises at

3  Elm Women's & Pediatric Community Health Center in Fresno, California, and adjacent and

4  surrounding premises.  CLINICA SIERRA VISTA employed and supervised Defendants

5  KATHLEEN KALFMAN and DMITRI DE LA CRUZ at all relevant times.  CLINICA SIERRA

6  VISTA knew or should have known of foreseeable, unreasonable risks and dangers posed to its

7  patients on the premises at Elm Women's & Pediatric Community Health Center in Fresno,

8  California, prior to the events described herein.  CLINICA SIERRA VISTA had a duty to take

9  reasonable steps to eliminate those risks and dangers and to warn its patients of such risks and

10  dangers.

11        10.     At all relevant times, Defendant DMITRI DE LA CRUZ, M.D. ("DE LA CRUZ")

12  was employed as a licensed medical physician by CLINICA SIERRA VISTA specifically to

13  perform medical services to CLINICA SIERRA VISTA's patients.  DE LA CRUZ came into

14  contact with Plaintiff in his role as a pediatrician at Elm Women's & Pediatric Community Health

15  Center.  In this role, Plaintiff and her parents placed great trust and confidence in DE LA CRUZ.

16  While performing the acts and omissions that Plaintiff alleges in this complaint, DE LA CRUZ

17  exceeded his authority and was not acting within the course and scope of his employment with

18  CLINICA SIERRA VISTA.

19        11.     At all relevant times, Defendant KATHLEEN KALFMAN ("KALFMAN") was the

20  Chief of Clinical Operations for CLINICA SIERRA VISTA and a mandatory reporter.  KALFMAN

21  was specifically mandated at all relevant times under 42 § USC 233(h)(1) to implement and follow

22  safety and security policies and procedures regarding the performance of health-related functions.

23  KALFMAN was specifically mandated at all relevant times under 42 § USC 233(h)(2) to review

24  and verify the credentials, references, claims history, fitness, professional review organization

25  findings, and license status of all CLINICA SIERRA VISTA physicians and other licensed or

26  certified health care practitioners.  While performing the acts and omissions that Plaintiff alleges in

27  this complaint, KALFMAN was responsible for the hiring, training, and supervision of CLINICA

28  SIERRA VISTA's staff, including DE LA CRUZ.  KALFMAN was also responsible for ensuring

compliance with state and federal laws and policies, including those pertaining to patient safety. KALFMAN knew or should have known of foreseeable, unreasonable risks and dangers posed to patients on the premises at Elm Women's & Pediatric Community Health Center in Fresno, California, prior to the events described herein.  KALFMAN had a duty to take reasonable steps to eliminate those risks and dangers and to warn CLINICA SIERRA VISTA patients of such risks and dangers.  All actions by KALFMAN alleged herein were taken under color of federal law and in the course and scope of her employment with CLINICA SIERRA VISTA.

12.     Defendant the UNITED STATES OF AMERICA (the "UNITED STATES") is a governmental entity.  During the relevant period the UNITED STATES, through CLINICA SIERRA VISTA, a Federally Qualified Health Center and deemed a Federal Public Health Service employee, was in possession and control of Elm Women's & Pediatric Community Health Center, a comprehensive healthcare organization, serving the primary medical, dental, and behavioral health needs of about 200,000 people in Kern, Fresno, and Inyo counties.  The UNITED STATES has waived sovereign immunity as to Plaintiff's tort claims against KALFMAN and CLINICA SIERRA VISTA, pursuant to FTCA, 28 USC § 2674.

13.     The true names and capacities, whether individual, corporate, partnership, joint venture, or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues them by such fictitious names.  When the true names and capacities of DOES 1 through 10 are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein.

14.     Plaintiff is informed and believes and on that basis alleges that each of the named Defendants and each of the fictitiously named Defendants are legally responsible in some manner for the occurrences herein alleged, and that the injuries as alleged herein were proximately and legally caused by the acts and/or omissions of such Defendants.

15.     Plaintiff is further informed and believes and on that basis alleges that each named Defendant and each of the fictitiously named Defendants was the agent, servant, employee, or joint venturer of each of the remaining Defendants and was at all times acting within the course and scope of said agency, service, employment, and/or joint venture, and each defendant has ratified and

approved the act of each other defendant.  Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and/or promote injustice.  Plaintiff prays for leave to amend this complaint when their true names have been ascertained.

### FACTS COMMON TO ALL COUNTS

#### DE LA CRUZ Had a Known History of Sexually
#### Assaulting Young Female Patients Prior to Assaulting K.A.

16.     DMITRI DE LA CRUZ was for many years a pediatrician at CLINICA SIERRA VISTA—a community clinic which holds itself out as offering care and support to the inner city, the rural and isolated, those of low, moderate, and fixed incomes, and families from an array of cultural backgrounds who speak several languages.  He took advantage of his position as a community clinic pediatrician to intentionally, repeatedly, shockingly sexually assault very young girls who came to him as patients.  CLINICA SIERRA VISTA received complaints that DE LA CRUZ did awful acts such as penetrating the vaginas of five-year-old female patients at least once in 2012 and at least once in 2014.  The message he got in response from CLINICA SIERRA VISTA was at the very least tacit consent; his superiors did nothing at all when they learned what he had done.

#### DE LA CRUZ Repeatedly Penetrated the Five-Year-Old
#### Plaintiff's Vagina With His Ungloved Fingers During a Routine Physical Examination.

17.     On or about September 20, 2018, MAYRA P. took her five-year-old daughter K.A. to CLINICA SIERRA VISTA's Elm Women's & Pediatric Community Health Center in Fresno, California for a routine physical examination, required before she could begin kindergarten.  An assistant at the clinic took K.A.'s vital signs, then instructed MAYRA P. to wait in an examination room with K.A. and her younger brother, then four years old.  She had brought K.A. to this clinic before, but she was seen by a different doctor.  DE LA CRUZ entered the examination room, shut the door behind him, and instructed MAYRA P. to put K.A. on the examination table and to lift up her dress.  MAYRA P. did so, assuming he would examine K.A.'s abdomen for abnormalities, as other doctors had done.  He was not accompanied by any medical staff.  He did not wash his hands or put gloves on.

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

18.     Once DE LA CRUZ had K.A. on the examination table, he immediately and wordlessly removed her panties and began rubbing her pubic area and vagina.  K.A. immediately appeared scared and uncomfortable; MAYRA P. froze in disbelief.  DE LA CRUZ then inserted two ungloved fingers into the five-year-old K.A.'s vagina and asked MAYRA P. in Spanish if she had told K.A. to give her vagina a name.

### DE LA CRUZ Was Undeterred When MAYRA P. Tried to Stop Him From Sexually Assaulting Her Daughter.

19.     K.A. looked at her mother in fear and tried to squirm away as DE LA CRUZ continued to penetrate her vagina with his fingers.  MAYRA P. looked at DE LA CRUZ in shock and answered his question, also in Spanish, "No, why would I tell her to name her vagina?!"  DE LA CRUZ then addressed K.A. directly and asked what she would like to name her vagina.  K.A. did not respond but looked as if about to cry as her doctor continued to violate her.  MAYRA P. then said sternly to DE LA CRUZ, again in Spanish, "I will tell her about her private parts *at another time!*"  With this, DE LA CRUZ finally took his fingers out of the young child, walked toward the door, told K.A., "Don't forget to give it a name!" and walked out of the room without performing any examination at all.

20.     MAYRA P. grabbed her daughter and left the examination room as quickly as she could.  She immediately attempted to report the assault to CLINICA SIERRA VISTA's management.  But when she asked to make her report, a CLINICA SIERRA VISTA employee told her there was no one at the clinic to take her report.  She left with K.A., who had started to cry, and said to her mother that what the doctor did was wrong.

21.     On September 21, 2018, Mayra P. returned to CLINICA SIERRA VISTA to report DE LA CRUZ's assault on her young daughter the day before.  When she began describing to a staff member what DE LA CRUZ had done, a nurse overheard and intervened.  She said this needed to be reported to the manager right away.  She brought MAYRA P. to Clinic Manager Alex Cervantes.  MAYRA P. made a written report to Cervantes, informing DE LA CRUZ's superiors of his crimes, having no idea they already knew he had done the same to other young girls at the clinic at least twice before.  She then reported the sexual assault to the Fresno Police Department.

22.     The Fresno Police Department investigated the assault.  Officers visited CLINICA SIERRA VISTA on September 28, 2018, and interviewed Clinic Manager Alex Cervantes.  When an officer asked him why he had not called the police when MAYRA P. made her report, Cervantes inexplicably and incorrectly said he was only obligated to report it to the clinic's human resources department, where KALFMAN was located.  When the police made contact with KALFMAN, she advised that CLINICA SIERRA VISTA had reviewed boxes of personnel files which contained two complaints made to the clinic.  One was in 2012 and the other in 2014—both were complaints that DE LA CRUZ had sexually assaulted young girls at the clinic.  She then added, incredibly, that no one at CLINICA SIERRA VISTA knew about these complaints even though they were in the clinic's own files.

### CLINICA SIERRA VISTA and KALFMAN
### Enabled DE LA CRUZ to Sexually Assault K.A.

23.     Had CLINICA SIERRA VISTA or KALFMAN reviewed DE LA CRUZ's credentials, references, claims history, fitness, professional review organization findings, and license status as required, his assault on K.A. would have been prevented.  Instead, they did nothing at all in the face of information that one of their doctors was repeatedly, shockingly sexually assaulting his young female patients.  This allowed and emboldened DE LA CRUZ to continue to do so an unknown number of times for years before he did it again, this time to K.A.

### K.A. Suffered Physical, Mental, and Emotional
### Injuries as Well as Injuries to Her Personal Dignity.

24.     K.A. continues to suffer physical, mental, and emotional injuries as well as injuries to her personal dignity caused by the sexual assault.  She exhibits nervousness and is no longer talkative as she was before DE LA CRUZ violated her at the clinic.  She is reluctant to leave the house other than for school.  She does not like to talk about anything that has to do with a doctor, and refuses to go to the doctor out of fear that she will be sexually assaulted again.  She has been more aggressive with her playmates at school and with her little brother.  She has difficulty concentrating, walks in her sleep, and talks to herself.  She cries a lot, but when someone notices her crying, she starts to play.  Some of the pictures she has drawn include a picture of a police officer

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

with handcuffs arresting DE LA CRUZ, a picture of him with an "X" through him, and of herself with a sad face.

## CLAIMS FOR RELIEF

### CLAIM ONE

### NEGLIGENCE (FTCA)

**(Against KALFMAN in Her Official Capacity,
CLINICA SIERRA VISTA, and the UNITED STATES)**

25.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

26.     The UNITED STATES, CLINICA SIERRA VISTA, and its employees DE LA CRUZ and KALFMAN owed Plaintiff a duty to exercise the ordinary care that a reasonable person would have exercised under the same or similar circumstance.

27.     The UNITED STATES, CLINICA SIERRA VISTA, and its employees DE LA CRUZ and KALFMAN breached the duty of care they owed to Plaintiff and engaged in gross negligence by exhibiting an extreme departure from what a reasonably careful person would do under the same or similar circumstance in part by:

        a.      failing to act after notice of DE LA CRUZ's illegal behavior;

        b.      failing to review and verify DE LA CRUZ's credentials, references, claims history, fitness, professional review organization findings, and license status as specifically mandated under 42 § USC 233(h)(2);

        c.      failing to report internally within CLINICA SIERRA VISTA the findings after reviewing and verifying DE LA CRUZ's credentials, references, claims history, fitness, professional review organization findings, and license status as specifically mandated under 42 § USC 233(h)(2), including failing to internally report that DE LA CRUZ had been accused of sexually assaulting two other patients in 2012 and 2014; and

        d.      failing to implement or follow any safety and security procedures as specifically mandated under 42 § USC 233(h)(1).

28.     Pursuant to 42 USC § 1346(b) the United States may be sued for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office of employment.  The Federal Tort Claims Act provides the exclusive remedy for tort lawsuits against the United States and allows the United States to be held liable to the same extent as a private employer under state law.  28 USC § 2679.

29.     The breaches of the foregoing duties by Defendants created a foreseeable risk of the type of harm done to Plaintiff; such harm was likely to occur in the absence of adequate safeguards. Thus, Defendants knew or should have known that Plaintiff was subject to an unreasonable risk of harm such that Defendants should have taken preventative measures.

30.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

31.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

32.     Defendants acted maliciously, oppressively, and fraudulently.  Their conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

<u>**CLAIM TWO**</u>

**NEGLIGENCE (California Common Law)**

**(Against DE LA CRUZ, in His Individual Capacity)**

33.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

34.     Plaintiff brings this claim for negligence under California common law against DE LA CRUZ in his individual capacity.

35.     DE LA CRUZ had a heightened duty of care to Plaintiff as her physician that required him to protect her against reasonably foreseeable harm, including sexual assault.

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

36.     Alternatively, DE LA CRUZ had a general duty of care concerning Plaintiff.

37.     DE LA CRUZ repeatedly breached his duty of care to Plaintiff by subjecting her to sexual assault.  A reasonably prudent physician would not have engaged in such conduct.

38.     DE LA CRUZ acted in a manner that is void of any medical justification.

39.     DE LA CRUZ's actions exceeded his authority and occurred outside the course and scope of his employment.  His actions and decisions in sexually assaulting Plaintiff were not related to the manner in which he rendered professional services and were so far below the acceptable standard of care, and in violation of CLINICA SIERRA VISTA's policies, that he could not have been making a policy judgment in his decision to sexually assault Plaintiff.  *Cooper v. Superior Court* (App. 2 Dist. 1997) 56 Cal.App.4th 744, 750-51.

40.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

41.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

42.     DE LA CRUZ acted maliciously, oppressively, and fraudulently.  His conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

## CLAIM THREE

### PREMISES LIABILITY (FTCA, California Common Law)

### (Against CLINICA SIERRA VISTA and the UNITED STATES)

43.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

44.     At all times relevant hereto, the Elm Women's & Pediatric Community Health Center, and adjacent and surrounding premises ("the Premises"), were owned, operated, secured, maintained, inspected, repaired, managed, serviced, or otherwise controlled by Defendants CLINICA SIERRA VISTA and the UNITED STATES.

45.     A business open to the public must use reasonable care to protect customers and invitees from another person's criminal misconduct on the premises if the owner, manager, controller, or operator had notice of the type of criminal misconduct occurring on the premises.

46.     Defendants CLINICA SIERRA VISTA and the UNITED STATES negligently and carelessly owned, operated, secured, maintained, inspected, repaired, managed, serviced, or otherwise controlled the Premises.

47.     Defendants CLINICA SIERRA VISTA and the UNITED STATES wantonly, recklessly, negligently, and carelessly owned, operated, secured, maintained, inspected, repaired, managed, serviced, or otherwise controlled the Premises by failing to provide adequate and safe means for patients to receive medical care.

48.     Defendants CLINICA SIERRA VISTA and the UNITED STATES wantonly, recklessly, negligently, and carelessly owned, operated, secured, maintained, inspected, repaired, managed, serviced or otherwise controlled the Premises by, among other things, failing to take reasonable steps to eliminate the risks and dangers posed by DE LA CRUZ and other abusive medical staff engaging in criminal misconduct at the Premises, including sexually assaulting patients; and failing to secure the safety of patients, customers, or invitees.

49.     Defendants CLINICA SIERRA VISTA and the UNITED STATES failed to implement methods they knew could have reduced or eliminated the unreasonable risk that DE LA CRUZ and other abusive medical staff would engage in criminal misconduct at the Premises, including sexually assaulting patients.

50.     Defendants CLINICA SIERRA VISTA and the UNITED STATES, acting through their actual and ostensible agents including, but not limited to, their managers, supervisors, and directors, each had actual or constructive notice of DE LA CRUZ's criminal misconduct, including sexually assaulting patients.  Despite the foreseeability that DE LA CRUZ would commit further, similar misconduct, they failed to review and verify DE LA CRUZ's credentials, references, claims history, fitness, professional review organization findings, and license status as specifically mandated under 42 § USC 233(h)(2); failed to report internally within CLINICA SIERRA VISTA the findings after reviewing and verifying DE LA CRUZ's credentials, references, claims history,

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

fitness, professional review organization findings, and license status as specifically mandated under 42 § USC 233(h)(2), including failing to internally report that DE LA CRUZ had been accused of sexually assaulting two other patients in 2012 and 2014; failed to implement or follow any safety and security procedures as specifically mandated under 42 § USC 233(h)(1); and failed to take any reasonable steps to prevent his foreseeable assaults and criminal misconduct on the Premises.

51.     Defendants CLINICA SIERRA VISTA and the UNITED STATES failed to conduct adequate inspections of the Premises to ascertain whether any dangers existed, including unmonitored and secluded areas where crimes could be committed yet go undetected, including the small, private, secluded medical examination room where DE LA CRUZ sexually assaulted Plaintiff.

52.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

53.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

54.     Defendants acted maliciously, oppressively, and fraudulently.  Their conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

## CLAIM FOUR

### DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 (FTCA, California Law)

### (Against KALFMAN in Her Official Capacity, CLINICA SIERRA VISTA, and the UNITED STATES)

55.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

56.     Plaintiff alleges that KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES violated the Unruh Civil Rights Act when they denied her full and equal access to advantages, facilities, privileges, or services because of her sex and age.

- 13 -

57.     The Unruh Civil Rights Act, California Civil Code § 51 *et seq*., provides that all persons are free and equal, no matter their sex, and are entitled to full and equal access to services in all business establishments of every kind whatsoever.  Civil Code § 52(a) states that whoever denies, aids, or incites a denial, or makes any discrimination or distinction contrary to § 51…is liable for each and every offense.

58.     The Unruh Civil Rights Act serves to "preserve a nondiscriminatory environment in California business establishments."  *Flowers v. Prasad* (App. 2 Dist. 2015) 238 Cal.App.4th 930, 937.  The scope of the Unruh Civil Rights Act is broadly interpreted.  The California Legislature's use of the words "all" and "of every kind whatsoever" in referring to business establishments, demonstrates intent that the term "business establishments" be used in the broadest possible sense. *O'Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790, 795.  Plaintiff accordingly alleges that CLINICA SIERRA VISTA is a business establishment and that it is liable for its discriminatory conduct.

59.     As set forth herein, KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES denied Plaintiff full and equal advantages, facilities, privileges, or services.  They did so through their action and inaction, including but not limited to failing to act after notice of DE LA CRUZ's prior sexual assaults; failing to review and verify his credentials, references, claims history, fitness, professional review organization findings, and license status; failing to report internally within CLINICA SIERRA VISTA the findings after reviewing and verifying DE LA CRUZ's credentials, references, claims history, fitness, professional review organization findings, and license status as specifically mandated under 42 § USC 233(h)(2), including failing to internally report that DE LA CRUZ had been accused of sexually assaulting two other patients in 2012 and 2014; and failing to implement or follow any safety and security procedures.  The action and inaction of KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES resulted in DE LA CRUZ's assault on Plaintiff, which transformed what should have been an ordinary visit to the doctor into a deeply traumatic, life-altering attack.

60.     The actions and inaction of KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES thus denied Plaintiff advantages, facilities, privileges and services equal to those

enjoyed by the patients of medical clinics.  Defendants were substantially motivated by Plaintiff's sex and age, discriminatorily denying her full and equal advantages, facilities, privileges, and/or services because she was female and five years old.

61.     Plaintiff alleges she was harmed, and that Defendants' conduct was a substantial factor in causing her harm.

62.     The Unruh Civil Rights Act creates a mandatory duty designed to protect Plaintiff from the kind of discriminatory conduct that caused her harm.

63.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

64.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

65.     Defendants acted maliciously, oppressively, and fraudulently.  Their conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.  Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM FIVE

### SEXUAL HARASSMENT IN VIOLATION OF CALIFORNIA CIVIL CODE § 51.9
### (FTCA, California Law)

#### (Against KALFMAN in Her Official Capacity,
#### CLINICA SIERRA VISTA, and the UNITED STATES)

66.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

67.     KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES stood in a business, service, or professional relationship with Plaintiff at all times referred to herein.  KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES are liable for damages pursuant to California Civil Code § 51.9.

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

68.     On September 20, 2018, DE LA CRUZ sexually assaulted Plaintiff when he intended to cause and caused harmful and offensive contact with Plaintiff's pubic area and vagina.  DE LA CRUZ's sexual assault of Plaintiff constituted physical conduct of a sexual nature that was unwelcome and severe within the meaning of California Civil Code § 51.9.

69.     Plaintiff was in a small, private, secluded medical examination room with DE LA CRUZ, outside the presence of any other medical staff.  As a five-year-old medical patient, she was under the control of DE LA CRUZ, KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES and in a position of vulnerability because of her business, service, or professional relationship with them.  She trusted DE LA CRUZ as her physician to help her, protect her, and not do her harm.  He outrageously exploited and violated that trust, leveraging the inherently imbalanced relationship to accomplish his despicable sexual assault on his five-year-old patient.

70.     Instead of a medical examination, DE LA CRUZ intentionally, recklessly, and wantonly did acts which resulted in severe psychological harm to the Plaintiff, including but not limited to, using his position as a physician to sexually harass and assault the Plaintiff, and to use his authority and position of trust to exploit the Plaintiff emotionally.

71.     Plaintiff did not and was unable to give consent to such acts.  She did not and was unable to easily terminate the business, service, or professional relationship with DE LA CRUZ, KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES, which was characterized by an inherent imbalance of power, leaving her vulnerable to the assault DE LA CRUZ committed against her.

72.     KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES knew or should have known of DE LA CRUZ's past sexual assaults of patients.  Despite this knowledge, KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES failed to act; failed to review and verify DE LA CRUZ's credentials, references, claims history, fitness, professional review organization findings, and license status as specifically mandated under 42 § USC 233(h)(2); failed to report internally within CLINICA SIERRA VISTA the findings after reviewing and verifying DE LA CRUZ's credentials, references, claims history, fitness, professional review organization findings, and license status as specifically mandated under 42 § USC 233(h)(2), including failure to

internally report that DE LA CRUZ had been accused of sexually assaulting two other patients in 2012 and 2014; and failed to implement or follow any safety and security procedures as specifically mandated under 42 § USC 233(h)(1).  Such failures constitute authorization and ratification of DE LA CRUZ's sexual assault.  By authorizing and ratifying it, KALFMAN, CLINICA SIERRA VISTA, and the UNITED STATES adopted his sexual assault of Plaintiff.  *Garcia ex rel. Marin v. Clovis Unified School Dist.*  (E.D. Cal. 2009) 627 F.Supp.2d 1187, 1202.

73.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

74.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

75.     Defendants acted maliciously, oppressively, and fraudulently.  Their conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

76.     Plaintiff seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM SIX

### GENDER VIOLENCE (Cal. Civ. Code § 52.4)

### (Against DE LA CRUZ in His Individual Capacity)

77.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

78.     Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against DE LA CRUZ in his individual capacity.

79.     Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party.  Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

80.     DE LA CRUZ discriminated against Plaintiff on the basis of her female gender when he sexually assaulted her, by physically penetrating her vagina with his ungloved fingers and

rubbing her vaginal region with his ungloved hand, under coercive conditions.

81.     DE LA CRUZ's actions exceeded his authority and occurred outside the course and scope of his employment.  His actions and decisions in sexually assaulting Plaintiff were not related to the manner in which he rendered professional services and were so far below the acceptable standard of care, and in violation of CLINICA SIERRA VISTA's policies, that he could not have been making a policy judgment in his decision to sexually assault Plaintiff.  *Cooper v. Superior Court* (App. 2 Dist. 1997) 56 Cal.App.4th 744, 750-51.

82.     By subjecting Plaintiff to sexual assault, DE LA CRUZ caused her to suffer physical, mental, and emotional injuries as well as injuries to her personal dignity.

83.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

84.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

85.     DE LA CRUZ acted maliciously, oppressively, and fraudulently.  His conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

86.     Plaintiff seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM SEVEN

### SEXUAL BATTERY (Cal. Civ. Code § 1708.5)

### (Against DE LA CRUZ in His Individual Capacity)

87.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

88.     Plaintiff brings this claim for sexual battery under California Civil Code § 1708.5 against DE LA CRUZ in his individual capacity.

89.     DE LA CRUZ violated Plaintiff's statutory right to be free from sexual battery by repeatedly sexually abusing her while she was a patient at CLINICA SIERRA VISTA.  This sexual

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

battery included repeated vaginal penetration with his ungloved fingers and repeatedly rubbing her vaginal region with his ungloved hand.

90.     DE LA CRUZ's sexual assault of Plaintiff occurred under coercive circumstances.

91.     For these reasons, DE LA CRUZ's sexual assault of Plaintiff, his patient, was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

92.     Given the deeply offensive nature of the sexual assault and lack of any possible medical justification for them, DE LA CRUZ committed them with the intent to cause harmful or offensive contact with Plaintiff's person.

93.     By intentionally subjecting Plaintiff to sexual assault, DE LA CRUZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any medical justification.

94.     DE LA CRUZ's actions exceeded his authority and occurred outside the course and scope of his employment.  His actions and decisions in sexually assaulting Plaintiff were not related to the manner in which he rendered professional services and were so far below the acceptable standard of care, and in violation of CLINICA SIERRA VISTA's policies, that he could not have been making a policy judgment in his decision to sexually assault Plaintiff.  *Cooper v. Superior Court* (App. 2 Dist. 1997) 56 Cal.App.4th 744, 750-51.

95.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

96.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

97.     DE LA CRUZ acted maliciously, oppressively, and fraudulently, and his conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

///

///

- 19 -

## CLAIM EIGHT

### BATTERY (California Common Law)

### (Against DE LA CRUZ, in His Individual Capacity)

98.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

99.     As set forth in this Complaint, DE LA CRUZ committed a battery against Plaintiff when he touched her with the intent to harm or offend.

100.     Under California law, a battery is "a violation of an individual's interest in freedom from intentional unlawful, harmful or offensive unconsented contacts with his or her person." *Rains v. Superior Court* (App. 2 Dist. 1984) 150 Cal.App.3d 933, 938.  The willful and unlawful use of force upon another is also a criminal offense. California Penal Code § 242.

101.     Plaintiff alleges that she did not consent to the touching.

102.     Plaintiff alleges that she was harmed or offended by Defendant DE LA CRUZ's conduct.

103.     Plaintiff further alleges that a reasonable person in Plaintiff's situation would be offended by the touching.

104.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

105.     As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

106.     DE LA CRUZ acted maliciously, oppressively, and fraudulently.  His conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

///

///

///

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

**<u>CLAIM NINE</u>**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (California Common Law)**

**(Against DE LA CRUZ, in His Individual Capacity)**

107.   Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

108.   Plaintiff alleges that DE LA CRUZ's conduct caused her to suffer severe emotional distress.

109.    As set forth in this Complaint, DE LA CRUZ engaged in conduct that was outrageous when he sexually assaulted Plaintiff, a young female child, because of her gender and age.

110.   Plaintiff alleges that DE LA CRUZ intended to cause Plaintiff emotional distress or acted with reckless disregard for the probability that she would suffer emotional distress.

111.   Taken as a whole, DE LA CRUZ's conduct was outrageous and was so extreme as to exceed all bounds usually tolerated in a civilized community.

112.   As alleged herein, Plaintiff suffered severe emotional distress and DE LA CRUZ's conduct was a substantial factor in causing Plaintiff's harm.

113.   As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, emotional distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

114.   As a direct, proximate, and foreseeable result of DE LA CRUZ's unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

DE LA CRUZ acted maliciously, oppressively, and fraudulently.  His conduct constitutes conscious disregard for Plaintiff's rights and safety, entitling her to punitive damages.

///

///

///

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against all Defendants, and each of them, on all theories of action as follows:

1.    For general damages within the jurisdiction of the Court according to proof;

2.    For all special damages, including but not limited to medical and incidental expenses according to proof, property damage, and loss of use;

3.    For punitive damages against non-government entity Defendants, as permitted by law;

4.    For costs of suit herein;

5.    For attorneys' fees, as permitted by law;

6.    For prejudgment interest as permitted by law; and

7.    For such other and further relief as the Court deems proper.


Dated:  July 20, 2021

By:  _/s/ Micha Star Liberty_
Micha Star Liberty

Attorneys for Plaintiff K.A., a minor,
by and through her _Guardian ad Litem_
MAYRA P.

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL